IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| DAVID AYERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:12-cv-753 |
| v. | ) | |
| | ) | |
| CITY OF CLEVELAND, Cleveland | ) | Judge James S. Gwin |
| Police Detectives MICHAEL CIPO and | ) | |
| DENISE KOVACH, CUYAHOGA | ) | |
| METROPOLITAN HOUSING | ) | |
| AUTHORITY, Cuyahoga Metropolitan | ) | |
| Housing Authority Sergeant | ) | |
| DONALDSON and Police Officers | ) | |
| RAYMOND MORGAN, THOMAS IMES, | ) | |
| and CHRIS JAKUB, and Unknown City of | ) | |
| Cleveland and Cuyahoga Metropolitan | ) | |
| Housing Authority Employees, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE TO DEFENDANT CHRISTOPHER JAKUB'S
MOTION TO DISMISS**

Now comes Plaintiff David Ayers, by and through his attorneys, Loevy & Loevy, and

hereby responds in opposition to Defendant Christopher Jakub's motion to dismiss, as follows:

### INTRODUCTION

Plaintiff David Ayers spent nearly twelve years in prison for a murder that he did not

commit.  Arrested at the age of 43, he was wrongfully convicted of murdering an elderly woman

who resided at an apartment complex owned by Defendant Cuyahoga Metropolitan Housing

Authority ("CMHA").  No physical evidence or eyewitness accounts tied Plaintiff to the crime;

to the contrary, all forensic testing excluded him as a suspect.  According to the Complaint, the

sole bases of Plaintiff's wrongful conviction were fabricated evidence and false testimony

engineered by members of the Cleveland Police Department and the CMHA Police Department,

including Defendant CMHA Police Officer Christopher Jakub.

On September 12, 2011 – nearly twelve years after he was falsely arrested for a crime he

did not commit – Plaintiff walked out of prison a free man, exonerated by new DNA testing and

other evidence.

Plaintiff filed his Complaint on March 27, 2012, bringing federal and state claims against,

inter alia, the Cleveland police detectives and CMHA police officers who caused his wrongful

conviction.  (Dkt. 1)  Plaintiff brings the following federal claims under 42 U.S.C. § 1983 against

all of the law enforcement officers, including Defendant Jakub,: Due Process (Count I),

Malicious Prosecution (Count II), Failure to Intervene (Count III), and Conspiracy (Count IV).

Plaintiff also brings state law claims against the police officers: Intentional Misrepresentation

(Count V), Malicious Prosecution (Count VI), and Intentional Infliction of Emotional Distress

(Count VIII).

Defendant Jakub has moved to dismiss Plaintiff's claims against him under Federal Rule

of Civil Procedure 12(b)(6) because, he alleges, Plaintiff has not pleaded sufficient factual

allegations relating to his involvement in the events giving rise to Plaintiff's claims.  Plaintiff

disagrees and respectfully requests that the Court deny Defendant Jakub's motion.

**LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility requirement is not a "probability

requirement" – rather, it merely requires "more than a sheer possibility that the defendant has

acted unlawfully." *Id*.  Furthermore, "the complaint need not set out the facts in detail; what is required is a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Williams v. Duke Energy Int'l, Inc.*, --- F.3d --- , 2012 WL 1970096, *7 (6th Cir. June 4, 2012) (quoting Fed. R. Civ. P. 8).  *See also Daubenmire v. City of Columbus*, 507 F.3d 383, 387–88 (6th Cir. 2007) (in ruling on a motion under Rule 12(b)(6), courts must determine whether the Plaintiff can prove a set of facts in support of his claims that would entitle him to relief) (internal quotation marks omitted).  At this stage, the court must construe the Complaint liberally and in the light most favorable to the non-moving party.  *White v. United States*, 601 F.3d 545, 552 (6th Cir. 2010).

## BACKGROUND

On December 17, 1999, an elderly resident of a CMHA apartment building, Dorothy Brown, was violently murdered.  (Dkt. 1 ¶ 18)  Ms. Brown was discovered in her apartment, lying on the floor in a pool of blood, naked from the waist down.  (*Id*.)  She had suffered more than twenty blunt impact blows to the head that fractured her skull, injured her brain and broke the left side of her face.  (*Id*. ¶ 19)  She also had defensive wounds on her arms and shoulder, and abrasions on her face.  (*Id*.)  In addition to being discovered partially nude, two pubic hairs were found in her mouth.  (*Id*. ¶ 20)

At the time of the murder, Plaintiff had worked as a CMHA security officer for eight years.  (*Id*. ¶ 13)  Plaintiff lived in the same building as Ms. Brown, where he received subsidized rent in exchange for performing community service and maintaining a visible security presence.  (*Id*.)  By all accounts, Plaintiff was a familiar and welcome presence at the CMHA apartment buildings.  (*Id*.)

Plaintiff was one of the last people to see Ms. Brown alive.  In the early morning hours of December 17, 1999, after working the late shift at another one of CMHA's apartment buildings, Plaintiff arrived back to his apartment and received a call from Ms. Brown.  (*Id*. ¶ 14)  Ms. Brown had fallen in her apartment and asked Plaintiff to come assist her.  (*Id*.)  This was not an uncommon occurrence, and Plaintiff went to help her.  (*Id*.)  One of Ms. Brown's friends, who also lived in the building, accompanied Plaintiff.  (*Id*. ¶ 15)  Once in the apartment, Plaintiff helped Ms. Brown up off the floor and into a chair.  (*Id*. ¶ 16)  Plaintiff and Ms. Brown's friend then left the apartment, locking it on their way out.  (*Id*.)  Approximately twelve hours later, Plaintiff learned that Ms. Brown had been murdered.

As alleged in Plaintiff's Complaint, members of the Cleveland Police Department ("CPD") responded immediately to the crime scene.  Plaintiff provided them with every detail he could remember about his interaction with Ms. Brown.  (*Id*. ¶ 24)  Members of the CMHA Police Department also responded, and as Plaintiff alleges, they determined to conduct their own investigation into the murder.  (*Id*. ¶ 28)  That investigation, however, was woefully inadequate, such that the CPD repeatedly disregarded the CMHA police officers' input and directly instructed them not to investigate the crime.  (*Id*. ¶¶ 28, 29)

The CMHA police officers, including Defendant Jakub, had no reason to suspect Plaintiff.  (*Id*.)  Plaintiff was innocent and had nothing to do with the crime.  Moreover, as a gay man, Plaintiff did not fit the profile of the perpetrator, given the obviously sexual nature in which the victim had been attacked.  (*Id*.)    Nevertheless, as Plaintiff alleges, the CMHA police officers – including Defendant Jakub – continued their "investigation," and became resolved to prove that Plaintiff committed the crime.  (*Id*.)

4

Plaintiff alleges that several CMHA police officers administered "voice stress test" to him – despite the CPD's specific instructions not to. (*Id*. ¶¶ 29, 31)  Plaintiff further alleges that several CMHA police officers falsely claimed that Plaintiff failed the test, and reported those falsities to the CPD detectives in charge of the investigation. (*Id*. ¶¶ 32-34)  On February 3, 2000, Plaintiff was taken to meet with the CPD detectives, who forcefully interrogated him about the results of the test. (*Id*. ¶¶ 37, 38)  Plaintiff insisted that he was telling the truth, and maintained his innocence. (*Id*. ¶ 39)  Although the CPD detectives ultimately let Plaintiff go, Plaintiff alleges that they then began to conspire with the CMHA police officers, including Defendant Jakub, to build a fabricated case against him. (*Id*. ¶ 40)  The fabrications included false reports about Plaintiff's appearance (or, as they falsely reported, his absence) on video surveillance footage recorded in the CMHA apartment building on the morning of Ms. Brown's murder. (*Id*. ¶ 41)  The CMHA police officers, including Defendant Jakub, also convened a CMHA Police Board hearing to make a finding that Plaintiff had lied during the investigation into Ms. Brown's death, even though they knew that was not true. (*Id*. ¶ 43)  Finally, Plaintiff alleges that in furtherance of the conspiracy, Defendant Jakub took Plaintiff to the police station on March 14, 2000, where the CPD detectives intended to further interrogate Plaintiff. (*Id*. ¶ 45)  March 14, 2000, would be Plaintiff's last day of freedom for more than eleven years. (*Id*. ¶ 46)  When Defendant Jakub left the police station, Plaintiff was arrested for the murder of Ms. Brown. (*Id*.)

## ARGUMENT

Taken together, and viewed in the light most favorable to Plaintiff, there is no question that these factual allegations support "more than a sheer possibility that [Defendant Jakub] has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949.  Defendant Jakub was among a small group of

CMHA and CPD police officers who set forth to frame Plaintiff for a crime for which he was entirely and unequivocally innocent. Pursuant to the allegations in Plaintiff's Complaint, Defendant Jakub participated in a baseless and maliciously targeted "investigation" that presumed (and then sought to prove) Plaintiff's guilt through individual actions and in concert with his colleagues, including but not limited to: fabricating evidence, administering a voice stress test to Plaintiff, falsely reporting the results of that test to detectives at the Cleveland Police Department, coordinating a campaign against Plaintiff within the CMHA Police Department, and ultimately, collaborating with the CPD in Plaintiff's wrongful arrest. These allegations satisfy the pleading standards set forth in the Federal Rules and under *Iqbal*.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this Court deny Defendant Jakub's motion to dismiss. In the event the Court grants Defendant's motion, Plaintiff respectfully requests that the Court dismiss his Complaint as to Defendant Jakub without prejudice so that Plaintiff may seek leave to file an amended Complaint.

RESPECTFULLY SUBMITTED,

/s/ Rachel Steinback_____
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Russell Ainsworth
Rachel Steinback
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, IL 60607
(312) 243-5900

6

## CERTIFICATE OF SERVICE

I, Rachel Steinback, hereby certify that I filed the foregoing Response to Defendant Christopher Jakub's Motion to Dismiss on June 29, 2012, by CM/ECF electronic filing, which was served through the Court's electronic filing system upon all counsel who have made an appearance.

/s/ Rachel Steinback_____