IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| DAVID AYERS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CLEVELAND, Cleveland Police Detectives MICHAEL CIPO and DENISE KOVACH, CUYAHOGA METROPOLITAN HOUSING AUTHORITY, Cuyahoga Metropolitan Housing Authority Sergeant DONALDSON and Police Officers RAYMOND MORGAN, THOMAS IMES, and CHRIS JAKUB, and Unknown City of Cleveland and Cuyahoga Metropolitan Housing Authority Employees,<br><br>Defendants. | ) | Case No. 1:12-cv-753<br><br>Judge James S. Gwin<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE TO THE CLEVELAND DEFENDANTS' MOTION TO DISMISS**

Plaintiff David Ayers, by and through his attorneys, Loevy & Loevy, respectfully responds to Defendants City of Cleveland, Michael Cipo, and Denise Kovach's motion to dismiss, as follows:

## Introduction

Plaintiff David Ayers spent nearly twelve years in prison for a murder that he did not commit. Arrested for the first time in his life at the age of 43, he was wrongfully convicted of brutally murdering an elderly woman who resided in an apartment complex owned by Defendant Cuyahoga Metropolitan Housing Authority ("CMHA"). No physical evidence or eyewitness accounts tied Plaintiff to the crime; to the contrary, all forensic testing excluded him as a suspect. Nevertheless, Defendants Cipo and Kovach – the Cleveland homicide detectives in charge of the

murder investigation – zeroed in on Plaintiff and determined that he was the perpetrator. As set forth in detail in Plaintiff's Complaint, Defendants Cipo and Kovach knowingly manufactured fabricated evidence and false testimony in order to secure Plaintiff's false arrest and wrongful conviction.

On September 12, 2011 – nearly twelve years after he was falsely arrested for a crime he did not commit – Plaintiff walked out of prison a free man, exonerated by new DNA testing and other evidence.

Seeking redress for the violations of his rights under state and federal law, Plaintiff filed the instant civil suit against Defendants Cipo and Kovach, the City of Cleveland, CMHA, and the CMHA police officers who assisted Defendants Cipo and Kovach in their sham investigation. Defendants City of Cleveland, Cipo and Kovach (hereinafter, "Defendants") have now moved to dismiss all of Plaintiff's claims against them under Federal Rule of Civil Procedure 12(b)(6), primarily on the ground that Plaintiff has failed to satisfy the pleading standard set forth under the Federal Rules. This argument wholly ignores more than eight pages of detailed factual allegations in Plaintiff's Complaint. For the reasons below, Plaintiff respectfully urges this Court to deny Defendants' motion.

**Factual Allegations**

On December 17, 1999, an elderly resident of a CMHA apartment building, Dorothy Brown, was violently murdered. (Dkt. 38, Amended Compl. ¶ 18) Ms. Brown was discovered in her apartment, lying on the floor in a pool of blood, naked from the waist down. (*Id.*) She had suffered more than twenty blunt impact blows to the head that fractured her skull, injured her brain and broke the left side of her face. (*Id.* ¶ 19) She also had defensive wounds on her arms

and shoulder, and abrasions on her face. (*Id.*) In addition to being discovered partially nude, two pubic hairs were found in her mouth. (*Id.* ¶ 20)

At the time of the murder, Plaintiff had worked as a CMHA security officer for eight years. (*Id.* ¶ 13) Plaintiff lived in the same building as Ms. Brown, where he received subsidized rent in exchange for performing community service and maintaining a visible security presence. (*Id.*) By all accounts, Plaintiff was a familiar and welcome presence at the CMHA apartment buildings. (*Id.*)

By chance, Plaintiff happened to be one of the last people to see Ms. Brown alive. In the early morning hours of December 17, 1999, after working the late shift at another one of CMHA's apartment buildings, Plaintiff returned to his apartment and received a call from Ms. Brown. (*Id.* ¶ 14) Ms. Brown had fallen in her apartment and asked Plaintiff to come assist her. (*Id.*) This was not an uncommon occurrence, and Plaintiff went to help her. (*Id.*) One of Ms. Brown's friends, who also lived in the building, accompanied Plaintiff. (*Id.* ¶ 15) Once in the apartment, Plaintiff helped Ms. Brown up off the floor and into a chair. (*Id.* ¶ 16) Plaintiff and Ms. Brown's friend then left the apartment, locking it on their way out. (*Id.*) Approximately twelve hours later, Plaintiff learned that Ms. Brown had been murdered.

As alleged in Plaintiff's Complaint, members of the Cleveland Police Department ("CPD") responded immediately to the crime scene. Plaintiff provided them with every detail he could remember about his interaction with Ms. Brown. (*Id.* ¶ 24) The CPD assigned two homicide detectives, Defendants Cipo and Kovach, as primary investigators on the case. (*Id.* ¶ 26) In the days following the murder, Defendants Cipo and Kovach spoke with various residents of the apartment building and the victim's family members to attempt to identify the perpetrator

or perpetrators. (*Id.* ¶ 27) Although they received several leads, nothing panned out initially, and in the weeks that followed, their investigation slowed. (*Id.*)

Meanwhile, members of the CMHA Police Department were conducting their own investigation into the murder. (*Id.* ¶ 28) That investigation was woefully inadequate, such that Defendants Cipo and Kovach's supervisor, a CPD Lieutenant, repeatedly disregarded the CMHA police officers' input and directly instructed them not to investigate the crime. (*Id.* ¶¶ 28, 29)

None of the Defendants had any reason to suspect Plaintiff. (*Id.*) Plaintiff was innocent and had nothing to do with the crime. Moreover, as a gay man, Plaintiff did not fit the profile of the perpetrator, given the obviously sexual nature in which the victim had been attacked. (*Id.*) Nevertheless, CMHA police officers administered a "voice stress test" to Plaintiff and informed Defendants Cipo and Kovach that Plaintiff had exhibited deception during the test. (*Id.* ¶ 34)

Defendants Cipo and Kovach knew that voice stress tests were unreliable and could not support probable cause. (*Id.* ¶ 35) Their investigation, however, had gone cold. (*Id.* ¶ 36) Seeing the possibility of closing their case, Defendants Cipo and Kovach summoned Plaintiff to the police station and forcefully interrogated him about the results of the voice stress test. (*Id.* ¶¶ 36-38) Defendants Cipo and Kovach also accused Plaintiff of lying about having received a call from the victim in the early morning hours of December 17, 1999, even though multiple other witnesses had corroborated Plaintiff's account. (*Id.* ¶ 38) Throughout the interrogation, Plaintiff insisted that he was telling the truth and maintained his innocence. (*Id.* ¶ 39) Unable to secure a confession, Defendants Cipo and Kovach ultimately let Plaintiff go. (*Id.* ¶ 40) For the next five weeks, however, they conspired with CMHA police officers to build a fabricated case against Plaintiff. (*Id.* ¶ 40)

The fabrications included false reports about Plaintiff's appearance (or, as they falsely reported, his absence) on video surveillance footage recorded in the CMHA apartment building on the morning of Ms. Brown's murder. (*Id.* ¶ 41) As Plaintiff had consistently reported to every Cleveland police officer who interviewed him – on the day Ms. Brown's body was found, and in the several subsequent interrogations conducted by Defendants Cipo and Kovach – Ms. Brown had called him at approximately 2:00 a.m. on December 17, 1999, seeking his assistance. (*Id.* ¶¶ 14, 15) Ms. Brown, who was known to drink, had fallen from her armchair and needed help getting back into it. (*Id.*) Plaintiff maintained that he and another building resident, Sarah Harris, had gone to the lobby of the building so that he could get the master key from a lockbox – something that Plaintiff had access to, given his job as a CMHA security guard. (*Id.* ¶ 15) After retrieving that master key, Plaintiff and Ms. Harris went up to Ms. Brown's apartment, helped her back into her armchair, and left the apartment, locking the door on their way out. (*Id.* ¶ 16) Plaintiff returned to the lobby in order to put the master key back in the lockbox, and then went back to his apartment for the night. (*Id.*)

Plaintiff's account of his activities on the morning of December 17th was corroborated by video surveillance footage from the lobby of the apartment building. (*Id.* ¶ 41) To build their case against Plaintiff, whose guilt they had already agreed upon, Defendants Cipo and Kovach falsely reported that they had watched the surveillance footage and that Plaintiff failed to appear anywhere in the video. (*Id.* ¶ 42) This was untrue, and Defendants Cipo and Kovach knew it. (*Id.*)

On March 14, 2000, after a multi-hour interrogation, Defendants Cipo and Kovach arrested Plaintiff without probable cause and immediately transported him to Cuyahoga County Jail. (*Id.* ¶¶ 45-47) Over the course of the next three days, Defendants Cipo and Kovach

interrogated Plaintiff two additional times in an attempt to elicit a confession. (*Id.* ¶¶ 48-49) Plaintiff maintained his innocence during those interrogations, because he was innocent. (*Id.* ¶¶ 48-49) Unable to get Plaintiff to implicate himself, Defendants Cipo and Kovach coerced one or more witnesses to falsely implicate Plaintiff as the perpetrator of the crime. (*Id.* ¶ 44) Nowhere in their police reports did they document this coercion. (*Id.*) Neither did Defendants Cipo and Kovach record – in their police reports, or in any other document – that the witnesses had ever taken positions contrary to the coerced and fabricated statements Defendants Cipo and Kovach documented that inculpated Plaintiff. (*Id.*)

On the sole basis of this false and fabricated circumstantial evidence, a grand jury indicted Plaintiff for the murder of Ms. Brown on March 27, 2000. (*Id.* ¶ 51)

Defendants Cipo and Kovach's misconduct did not stop after Plaintiff's false arrest. As the trial date neared, the Cuyahoga County Prosecutor's Office attempted to engage Plaintiff in plea negotiations. (*Id.* ¶ 52) The prosecutors offered Plaintiff three plea deals, the last of which was the opportunity to plead to a misdemeanor. (*Id.* ¶ 53) Plaintiff rejected each offer, refusing to plead guilty to something he had not done. (*Id.*) Knowing the prosecutors would need more evidence to convict Plaintiff, Defendants Cipo and Kovach set about to fabricate more evidence. (*Id.* ¶ 54)

Specifically, the week before the trial began, Defendants Cipo and Kovach announced for the first time that Plaintiff had supposedly made inculpatory statements when they arrested him on March 14, 2000. (*Id.* ¶ 55) Defendants Cipo and Kovach fabricated those statements. (*Id.* ¶ 56) Plaintiff had not made any inculpatory statements to Defendants Cipo and Kovach on March 14, 2000, or at any other time, because he was innocent and did not commit the crime. (*Id.*)

Additionally, on the eve of trial, Defendants Cipo and Kovach enlisted the assistance of a jailhouse snitch. (*Id.* ¶ 57) Defendants Cipo and Kovach improperly fed details of the crime to a man named Donald Hutchinson, so that he could then falsely claim that Plaintiff had confessed to him while they were housed together at Cuyahoga County Jail. (*Id.*) Defendants Cipo and Kovach also told Mr. Hutchinson to have further conversations with Plaintiff at the Jail, and to ask Plaintiff specific questions about his case. (*Id.* ¶ 58) Defendants Cipo and Kovach knew that this was an end-run around Plaintiff's constitutional right to counsel. (*Id.*)

At trial, Mr. Hutchinson falsely testified that Plaintiff had confessed his guilt to him while they were housed together at Cuyahoga County Jail. (*Id.* ¶ 59) Mr. Hutchinson further testified to facts that Defendants Cipo and Kovach fed to him about the crime. (*Id.*) No physical evidence ever tied Plaintiff to the crime, and in fact, hair comparison analyses of the pubic hairs found in the victim's mouth excluded Plaintiff as a suspect. (*Id.* ¶ 61) On the basis of Defendants' fabrications, Plaintiff was found guilty of Ms. Brown's murder. (*Id.* ¶ 63)

More than a decade later, the Sixth Circuit vacated Plaintiff's conviction. (*Id.* ¶ 65) Among other things, the Court indicted Defendants Cipo and Kovach's conduct, finding that Mr. Hutchinson's testimony "strongly suggest[ed], at a minimum, that the police shared information with Hutchinson." (*Id.* ¶ 66) After the Sixth Circuit vacated Plaintiff's conviction, the Cuyahoga County Prosecutor's Office received results from DNA tests conducted on the pubic hairs found in the victim's mouth that conclusively excluded Plaintiff as the perpetrator. (*Id.* ¶ 67) Nearly twelve years after Defendants Cipo and Kovach falsely arrested Plaintiff for a crime he did not commit, Plaintiff walked out of prison a free man. (*Id.* ¶ 68)

## Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility requirement is not a "probability requirement" – rather, it merely requires "more than a sheer possibility that the defendant has acted unlawfully." *Id*. Furthermore, "the complaint need not set out the facts in detail; what is required is a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Williams v. Duke Energy Int'l, Inc.*, --- F.3d --- , 2012 WL 1970096, *7 (6th Cir. June 4, 2012) (quoting Fed. R. Civ. P. 8). *See also Daubenmire v. City of Columbus*, 507 F.3d 383, 387–88 (6th Cir. 2007) (in ruling on a motion under Rule 12(b)(6), courts must determine whether the plaintiff can prove a set of facts in support of his claims that would entitle him to relief) (internal quotation marks omitted). At this stage, the court must construe the Complaint liberally and in the light most favorable to the non-moving party. *White v. United States*, 601 F.3d 545, 552 (6th Cir. 2010).

## Argument

### I. Plaintiff's Complaint Notifies Defendants of His Claims

Taken together, and viewed in the light most favorable to Plaintiff, there is no question that these factual allegations support "more than a sheer possibility that [Defendants Cipo and Kovach] acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. As set forth in detail in Plaintiff's Complaint, Defendants Cipo and Kovach – the lead detectives on the Dorothy Brown homicide investigation – worked to frame Plaintiff for a crime for which he was innocent. Pursuant to the allegations in Plaintiff's Complaint, and construed in the light most favorable to Plaintiff,

Defendants Cipo and Kovach participated in a sham "investigation" that presumed (and then sought to prove) Plaintiff's guilt, including but not limited to: falsifying police reports regarding the video surveillance footage to implicate Plaintiff as the murderer; coercing witnesses to make statements to inculpate Plaintiff; in the weeks before trial, fabricating an admission of guilt that Plaintiff purportedly made during his arrest, and falsely testifying to that supposed statement at trial; improperly feeding details of the crime to a jailhouse snitch to bolster the credibility of his testimony at trial; and directing a jailhouse snitch to question Plaintiff about the crime, in clear and knowing violation of Plaintiff's constitutional right to counsel.

Respectfully, these allegations are not "ambiguous allegations" or "ridiculous 'the-defendant-unlawfully-harmed-me' accusation[s]," as Defendants contend. *See* Dkt. 43, Defendants' Mot. to Dismiss at 7. Plaintiff's factual allegations amply satisfy the pleading requirements set forth in the Federal Rules and case law, as they identify a series of specific acts undertaken by Defendants Cipo and Kovach that, if true, state claims against Defendants Cipo and Kovach for the violations of Plaintiff's constitutional rights.[1] Later in this litigation, Plaintiff will be required to prove his claims. For now, Defendants are free to admit or deny each of Plaintiff's allegations.

## II. Plaintiff Pleads A Viable *Monell* Claim Against Defendant City of Cleveland

Defendants attack Plaintiff's *Monell* claim on the ground that Plaintiff alleges, but does not "prove," that the City of Cleveland maintained a practice of pursuing wrongful convictions that was the driving force behind the violation of his constitutional rights. *See id*. at 7-8. This misstates the standard that district courts must employ when considering a motion under Rule

[1] It is worth noting that Defendants do not, and cannot, contend that Plaintiff fails to provide adequate notice of the legal claims he brings against them. Nor do they argue, for example, that Plaintiff cannot maintain a due process claim predicated on Defendants' fabrication of evidence. Defendants simply contend that Plaintiff's allegations are conclusory rather than factual, and thus fail to satisfy the pleading requirements set forth in the Federal Rules and case law.

12(b)(6). At this juncture, Plaintiff need not "prove" his claims. The Federal Rules and long-standing case law simply require Plaintiff to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Defendants will have the opportunity to argue proof, and to hold Plaintiff to a higher evidentiary burden, at summary judgment.

On the matter of what a *Monell* claim entails, there seems to be no dispute. Defendants argue that the "[l]iability of a municipal government under § 1983 solely depends on whether the plaintiff's constitutional rights have been violated as a result of a policy or custom." *See* Dkt. 43 at 8. Put another way, the ultimate inquiry addresses hinges on being able to demonstrate a "direct causal link between the municipal action" (i.e., the policy or practice) "and the deprivation of constitutional rights." *Id.*

In his Complaint, Plaintiff alleges just that. Namely, Plaintiff alleges that Defendants Cipo and Kovach's alleged violations of his constitutional rights were "undertaken pursuant to a routine practice of the Cleveland Police Department to pursue wrongful convictions through profoundly flawed investigations and coerced evidence," and that those "policies and practices [] were the moving force driving" the violations. *See* Dkt. No. 38, ¶ 80; *see also id*. ¶¶ 81-82. Thus, by Defendants' own terms, Plaintiff has satisfactorily pleaded a viable *Monell* claim against Defendant City of Cleveland.

Furthermore, these allegations come on the heels of extensive factual allegations, discussed *supra*, concerning the acts of Defendants Cipo and Kovach. Accepting Plaintiff's allegations as true and drawing all inferences in the light most favorable to him, Plaintiff respectfully submits that he has sufficiently pleaded a § 1983 *Monell* claim against the City of Cleveland. *See e.g.*, *A.M.S. v. Steele*, 2012 WL 2130971, *9 (S.D. Ohio June 8, 2012) (finding

plaintiffs' allegations sufficient to support their *Monell* claim and denying the municipality's motion to dismiss); *Stack v. Karnes*, 750 F.Supp.2d 892, 899 (S.D. Ohio 2010) (same).

**III. The Ohio Revised Code Does Not Grant Defendants Cipo and Kovach Immunity From Plaintiff's State Law Claims**

Defendants acknowledge, as they must, that under the Ohio Revised Code, they cannot receive statutory immunity for conduct undertaken "with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. § 2744.03(A)(6). Defendants nevertheless ask this Court to find that Plaintiff has merely inserted "catch-all magic words" into his Complaint that cannot be credited. *See id*. Respectfully, no fair reading of the Complaint could support that view.

To support his intentional misrepresentation claim, for example, Plaintiff alleges that Defendants Cipo and Kovach made false representations to the prosecution that there was physical and testimonial evidence proving that Plaintiff's statements were false and that he killed Dorothy Brown. *See* Dkt. 38 ¶ 108. As discussed at length in the Complaint's factual allegations, these false representations included untruths regarding Plaintiff's appearance on the video surveillance footage, false statements Defendants Cipo and Kovach coerced from witnesses to inculpate Plaintiff in the crime, and the false testimony Defendants Cipo and Kovach themselves provided regarding Plaintiff's alleged admission of guilt. Defendants cannot honestly maintain that these alleged actions fail to support a plausible inference of malice, bad faith, or recklessness, as Plaintiff alleges.

Plaintiff also provides specific factual allegations to support his state law malicious prosecution claim and his intentional infliction of emotional distress claim against Defendants Cipo and Kovach. *See id.* ¶ 116 (Defendants "accused Mr. Ayers of criminal activities knowing those accusations to be without genuine probable cause; fabricated evidence and withheld the manner in which that evidence was fabricated; and made statements and reports to the []

prosecutors with the intent of exerting influence to institute and continue the judicial proceedings"), ¶ 123 ("As described more fully in the preceding paragraphs, by framing Mr. Ayers for a murder he did not commit, [Defendants] intended to cause emotional distress, or knew or should have known that their actions would result in serious emotional distress").

Defendants' argument to dismiss Plaintiff's state law claims against Defendants Cipo and Kovach on this ground cannot prevail.

**IV. Plaintiff's Complaint States a Malicious Prosecution Claim Under State Law**

Defendants posit that the fact that Plaintiff was convicted at trial warrants the dismissal of his state law malicious prosecution claim. *See* Dkt. 43 at 11. To support their position, Defendants quote this Court's summary judgment ruling in *Elkins v. Summit County*, 2009 WL 1150114 (N.D. Ohio April 28, 2009), a case also litigated by undersigned counsel's firm. Specifically, Defendant reference this Court's analysis of the *Elkins* plaintiff's state law malicious prosecution claim, which cites Sixth Circuit law for the proposition that "a guilty conviction, even if later reversed, 'raises a conclusive presumption of probable cause and constitutes a complete defense in a later action for malicious prosecution . . ." *Id*. at *11 (citing *Harris v. Bornhorst*, 513 F.3d 503, 520) (internal citation omitted). Invoking that seemingly absolute prohibition, Defendants summarily ask this Court to dismiss Plaintiff's state law malicious prosecution claim.

Regrettably, Defendants cut the case cite short. The very next sentence reads: "However, 'fraud or unlawful means in securing a conviction' can negate probable cause as shown by the conviction." *Id*. (citation omitted). Indeed, this Court found that to be the case in *Elkins*. *Id*. In this case, too, Plaintiff alleges that there was no evidence that would have supported probable cause to either arrest or prosecute him. Plaintiff alleges that Defendants Cipo and Kovach

unlawfully manufactured false evidence which they used to create (fraudulent) probable cause for his arrest and prosecution. Defendants' argument thus fails.

**V. Plaintiff's Complaint States A Viable Indemnification Claim**

Defendants argue that Plaintiff lacks standing to bring an indemnification claim against Defendant City of Cleveland, and that such a claim belongs only to a City employee. This argument has been rejected by at least one other court in this District. In *Vaughan v. City of Shaker Heights*, 2011 WL 5966732 (N.D. Ohio Nov. 28, 2011), plaintiff James Vaughan filed suit against the City of Shaker Heights and one of its detectives for violations of his constitutional rights. That case, as here, involved allegations of fabricated and falsified evidence and malicious prosecution. Among Mr. Vaughan's claims was an indemnification claim against the City of Shaker Heights, based on its detective's conduct.

The City of Shaker Heights filed a motion to dismiss the complaint; as to the plaintiff's claim for indemnification, the City argued that only a municipal employee could seek indemnification against its municipal employer. *Vaughan*, 2011 WL 5966732, at *4 ("Defendants object to the Plaintiff's indemnification claim, contending that only a municipal employee may seek indemnification against a municipality pursuant to O.R.C. 2744.07(A)(1)."). That argument is identical to the argument Defendants make here. The court in that case rejected the City's argument and permitted Mr. Vaughan's indemnification claim to proceed. *See id*. at *5 (denying City of Shaker Heights's motion to dismiss plaintiff's indemnification claim brought under R.C. 2744.07(A)(2)). Plaintiff respectfully submits that the *Vaughan* court's reasoning applies equally here.

Defendant provide no authority for its proposition that Plaintiff lacks standing to sue for indemnification under R.C. 2744.07(A)(2). The single case it cites in its argument, *Buckeye*

*Union Insurance Company v. Arlington Board of Education*, 93 Ohio App.3d 285 (1994), is inapposite. As Plaintiff explained in his response to Defendant CMHA's Renewed Motion to Dismiss, the *Buckeye* court was asked to determine whether an insurance company that assumed the defense of an Arlington Board of Education ("Board") employee in a civil suit could later recover the cost of that defense from the Board. The question in *Buckeye* involved the interpretation of R.C. 2744.07(C) – not the indemnification provision at issue here – which provides, "If a political subdivision refuses to provide an employee with a defense in a civil action or proceeding . . . the employee may file, in the court of common pleas of the county in which the political subdivision is located, an action seeking a determination as to the appropriateness of the refusal of the political subdivision to provide him with a defense under that division." In analyzing that statutory provision, the *Buckeye* court held that the right to bring suit to determine the propriety of the Board's action (i.e., its refusal to defend its employee in the civil suit) belonged solely to the employee, per the plain language of the statute. *Buckeye Union Ins. Co.*, 93 Ohio App.3d at 288. This has no bearing on Plaintiff's indemnification claim.

**VI. Plaintiff Does Not Plead *Respondeat Superior* Against Defendant City of Cleveland In Connection With His Claims Under 42 U.S.C. § 1983**

Because Plaintiff does not plead a § 1983 claim against Defendant City of Cleveland for liability under a *respondeat superior* theory, the Court may disregard Defendants' argument regarding the same. Separately, however, Plaintiff does not oppose the dismissal of his respondeat superior claim (Count X) against Defendant City of Cleveland.

**Conclusion**

Defendants' motion ignores a wealth of factual allegations that satisfy federal pleading standards and, when taken as true and viewed in the light most favorable to Plaintiff, provide

ample support for Plaintiff's legal claims. For the reasons stated above, Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss.

RESPECTFULLY SUBMITTED,

/s/ Rachel Steinback
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Russell Ainsworth
Rachel Steinback
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, IL 60607
(312) 243-5900

**CERTIFICATE OF SERVICE**

I, Rachel Steinback, hereby certify that I filed the foregoing Response to Defendants City of Cleveland, Cipo and Kovach's Motion to Dismiss on September 5, 2012, by CM/ECF electronic filing, which was served through the Court's electronic filing system upon all counsel who have made an appearance.

/s/ Rachel Steinback